**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| ERVIN CUMMINGS, | : | |
| | : | Civil Action No. 06-5925 (RBK) |
| Plaintiff, | : | |
| | : | |
| v. | : | **OPINION** |
| | : | |
| MICHAEL DARSEY, et al., | : | |
| | : | |
| Defendants. | : | |

**APPEARANCES:**

Plaintiff <u>pro se</u>
Ervin Cummings
Riverfront State Prison
P.O. Box 9104
Camden, NJ 08101

**KUGLER**, District Judge

   Plaintiff Ervin Cummings, a prisoner confined at Riverfront State Prison, seeks to bring this action <u>in forma pauperis</u> pursuant to 42 U.S.C. § 1983, alleging violations of his constitutional rights.  Based on his affidavit of indigence and the absence of three qualifying dismissals within 28 U.S.C. §1915(g), the Court will grant Plaintiff's application to proceed <u>in forma pauperis</u> pursuant to 28 U.S.C. § 1915(a) and order the Clerk of the Court to file the Complaint.

   At this time, the Court must review the Complaint to determine whether it should be dismissed as frivolous or malicious, for failure to state a claim upon which relief may be

granted, or because it seeks monetary relief from a defendant who is immune from such relief.

## I.   BACKGROUND

The following factual allegations are taken from Plaintiff's Complaint and are accepted as true for purposes of this review.

Plaintiff is a prisoner confined at Riverfront State Prison who alleges that he is compelled to participate in the "Bridge Program," a drug treatment program operated by the Gateway Foundation, under threat of penalties including an I-override, exclusion from the law library, exclusion from educational programs, and reduction in gym time.  In addition, Plaintiff contends that the Gateway Foundation Program took his clothes.

Plaintiff contends that the drug treatment program contains a religious component that is objectionable to him as a Muslim man and that the program prohibits him from attending religious services except for one day a week.  Plaintiff contends that he does not have a drug or alcohol abuse program, so he should not be required to participate in the treatment program.

Plaintiff names as defendants the New Jersey Department of Corrections Program Department, the Gateway Foundation, Michael Darsey, and D.O.C. Assistant Commissioner Carrie Johnson.  The Court construes the Complaint as seeking all appropriate relief.

II.   STANDARDS FOR A SUA SPONTE DISMISSAL

This Court must dismiss, at the earliest practicable time, certain in forma pauperis and prisoner actions that are frivolous, malicious, fail to state a claim, or seek monetary relief from a defendant who is immune from such relief.  See 28 U.S.C. § 1915(e)(2) (in forma pauperis actions); 28 U.S.C. § 1915A (actions in which prisoner seeks redress from a governmental defendant); 42 U.S.C. § 1997e (prisoner actions brought with respect to prison conditions).

In determining the sufficiency of a pro se complaint, the Court must be mindful to construe it liberally in favor of the plaintiff.  Haines v. Kerner, 404 U.S. 519, 520-21 (1972); United States v. Day, 969 F.2d 39, 42 (3d Cir. 1992).  The Court must "accept as true all of the allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff."  Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997).  The Court need not, however, credit a pro se plaintiff's "bald assertions" or "legal conclusions."  Id.

A complaint is frivolous if it "lacks an arguable basis either in law or in fact."  Neitzke v. Williams, 490 U.S. 319, 325 (1989) (interpreting the predecessor of § 1915(e)(2), the former § 1915(d)).  The standard for evaluating whether a

complaint is "frivolous" is an objective one. Deutsch v. United States, 67 F.3d 1080, 1086-87 (3d Cir. 1995).

A pro se complaint may be dismissed for failure to state a claim only if it appears "'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" Haines, 404 U.S. at 521 (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)); Milhouse v. Carlson, 652 F.2d 371, 373 (3d Cir. 1981). Where a complaint can be remedied by an amendment, a district court may not dismiss the complaint with prejudice, but must permit the amendment. Denton v. Hernandez, 504 U.S. 25, 34 (1992); Grayson v. Mayview State Hospital, 293 F.3d 103, 108 (3d Cir. 2002) (dismissal pursuant to 28 U.S.C. § 1915(e)(2)); Shane v. Fauver, 213 F.3d 113, 116-17 (3d Cir. 2000) (dismissal pursuant to 42 U.S.C. § 1997e(c)(1)); Urrutia v. Harrisburg County Police Dept., 91 F.3d 451, 453 (3d Cir. 1996).

### III.  SECTION 1983 ACTIONS

A plaintiff may have a cause of action under 42 U.S.C. § 1983 for certain violations of his constitutional rights. Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ... .

4

Thus, to state a claim for relief under § 1983, a plaintiff must allege, first, the violation of a right secured by the Constitution or laws of the United States and, second, that the alleged deprivation was committed or caused by a person acting under color of state law.[1]  West v. Atkins, 487 U.S. 42, 48 (1988); Piecknick v. Pennsylvania, 36 F.3d 1250, 1255-56 (3d Cir. 1994).

## IV.   ANALYSIS

### A.   Eleventh Amendment

The Eleventh Amendment to the United States Constitution provides that, "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another State, or by Citizens or Subjects of any Foreign State."

As a general proposition, a suit by private parties seeking to impose a liability which must be paid from public funds in a state treasury is barred from federal court by the Eleventh Amendment, unless Eleventh Amendment immunity is waived by the state itself or by federal statute.  See, e.g., Edelman v. Jordan, 415 U.S. 651, 663 (1974).  The Eleventh Amendment protects states and their agencies and departments from suit in federal court regardless of the type of relief sought.  Pennhurst

---

[1] The facts alleged in the Complaint are not sufficient to permit this Court to determine whether the Gateway Foundation and Michael Darsey are state actors under § 1983.

5

State School and Hospital v. Halderman, 465 U.S. 89, 100 (1984). Similarly, absent consent by a state, the Eleventh Amendment bars federal court suits for money damages against state officers in their official capacities.  See Kentucky v. Graham, 473 U.S. 159, 169 (1985).  Section 1983 does not override a state's Eleventh Amendment immunity.  Quern v. Jordan, 440 U.S. 332 (1979).

Title 28 Sections 1915(e)(2)(B)(iii) and 1915A(b)(2) require this Court to dismiss this action if it "seeks monetary relief from a defendant who is immune from such relief."

In addition, neither states, nor governmental entities that are considered arms of the state for Eleventh Amendment purposes, nor state officers sued in their official capacities for money damages are persons within the meaning of § 1983.  Will v. Michigan Dept. of State Police, 491 U.S. 58, 64, 70-71 and n.10 (1989); Grabow v. Southern State Correctional Facility, 726 F.Supp. 537, 538-39 (D.N.J. 1989) (the New Jersey Department of Corrections is not a person under § 1983).

For the foregoing reasons, all claims against the New Jersey Department of Corrections Program Department and all damages claims against defendant Carrie Johnson in his official capacity must be dismissed with prejudice.

B.   Access to Courts Claim

The constitutional right of access to the courts is an aspect of the First Amendment right to petition the government

for redress of grievances. <u>Bill Johnson's Restaurants, Inc. v. NLRB</u>, 461 U.S. 731, 741 (1983). In addition, the constitutional guarantee of due process of law has as a corollary the requirement that prisoners be afforded access to the courts in order to challenge unlawful convictions and to seek redress for violations of their constitutional rights. <u>Procunier v. Martinez</u>, 416 U.S. 396, 419 (1974), <u>overruled on other grounds</u>, <u>Thornburgh v. Abbott</u>, 490 U.S. 401, 413-14 (1989). See also <u>Peterkin v. Jeffes</u>, 855 F.2d 1021, 1036 n.18 (3d Cir. 1988) (chronicling various constitutional sources of the right of access to the courts).

In <u>Bounds v. Smith</u>, 430 U.S. 817, 828 (1977), the Supreme Court held that "the fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." The right of access to the courts is not, however, unlimited. "The tools [that Bounds] requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any <u>other</u> litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of

conviction and incarceration." Lewis v. Casey, 518 U.S. 343, 355 (1996) (emphasis in original).

There is no "abstract, freestanding right to a law library or legal assistance, [and] an inmate cannot establish relevant actual injury simply by establishing that his prison's law library or legal assistance program is subpar in some theoretical sense. ... [T]he inmate therefore must go one step further and demonstrate that the alleged shortcomings in the library or legal assistance program hindered his efforts to pursue a [non-frivolous] legal claim. He might show, for example, that a complaint he prepared was dismissed for failure to satisfy some technical requirement which, because of deficiencies in the prison's legal assistance facilities, he could not have known. Or that he had suffered arguably actionable harm that he wished to bring before the courts, but was so stymied by inadequacies of the law library that he was unable to file even a complaint." Lewis, 518 U.S. at 351.

In describing the scope of services which must be provided by the state to indigent prisoners, the Supreme Court has stated, "[i]t is indisputable that indigent inmates must be provided at state expense with paper and pen to draft legal documents, with notarial services to authenticate them, and with stamps to mail them. ... This is not to say that economic factors may not be considered, for example, in choosing the methods used to provide

meaningful access. But the cost of protecting a constitutional right cannot justify its total denial." Bounds, 430 U.S. at 824-25, clarified on other grounds, Lewis v. Casey, 518 U.S. 343. Thus, "there is no First Amendment right to subsidized mail or photocopying. [Instead], the inmates must point to evidence of actual or imminent interference with access to the courts." Reynolds v. Wagner, 128 F.3d 166, 183 (3d Cir. 1997).

In addition, one alternative for providing prisoners meaningful access to the courts is the provision of counsel. See e.g., Bounds, 430 U.S. at 828 (approving the provision of "adequate assistance from persons trained in the law"); Rauso v. Zimmerman, 2006 WL 3717785, *4 (M.D. Pa. 2006) (collecting cases); Pressley v. Johnson, 2006 WL 2806572, *5 (W.D. Pa. 2006) (collecting cases).

Moreover, a prisoner alleging a violation of his right of access must show that prison officials caused him past or imminent "actual injury." See Lewis, 518 U.S. at 348-55 and n.3 (1996); Oliver v. Fauver, 118 F.3d 175, 177-78 (3d Cir. 1997).

Here, Plaintiff alleges that he has a pending appeal, but he does not allege that any reduction in his access to the law library has resulted in actual injury. Nor does he state whether he is represented by counsel on appeal. Accordingly, Plaintiff has failed to state a claim for unconstitutional denial of access to the courts.

C.   Due Process Claims

A liberty interest protected by the Due Process Clause may arise from either of two sources:  the Due Process Clause itself or State law.  See Hewitt v. Helms, 459 U.S. 460, 466 (1983); Asquith v. Department of Corrections, 186 F.3d 407, 409 (3d Cir. 1999).

With respect to convicted and sentenced prisoners, "[a]s long as the conditions or degree of confinement to which the prisoner is subjected is within the sentence imposed upon him and is not otherwise violative of the Constitution, the Due Process Clause does not in itself subject an inmate's treatment by prison authorities to judicial oversight."  Montanye v. Haymes, 427 U.S. 236, 242 (1976), quoted in Hewitt, 459 U.S. at 468 and Sandin v. Conner, 515 U.S. 472, 480 (1995).  Cf. Washington v. Harper, 494 U.S. 210, 221-22 (1990)(prisoner has liberty interest under the Due Process Clause in freedom from involuntary administration of psychotropic drugs); Vitek v. Jones, 445 U.S. 480, 493-94 (1980)(prisoner has liberty interest under the Due Process Clause in freedom from involuntary transfer to state mental hospital coupled with mandatory treatment for mental illness, a punishment carrying "stigmatizing consequences" and "qualitatively different" from punishment characteristically suffered by one convicted of a crime).

States, however, may confer on prisoners liberty interests that are protected by the Due Process Clause. "But these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin, 515 U.S. at 484 (finding that disciplinary segregation conditions which effectively mirrored those of administrative segregation and protective custody were not "atypical and significant hardships" in which a state conceivably might create liberty interest). See also Asquith, 186 F.3d at 411-12 (return to prison from halfway house did not impose "atypical and significant hardship" on prisoner and, thus, did not deprive him of protected liberty interest). In Griffin v. Vaughn, 112 F.3d 703, 708-09 (3d Cir. 1997), the Court of Appeals for the Third Circuit held that a 15-month confinement in administrative custody did not impose "atypical and significant hardship," even in the face of state regulation requiring release to the general population after 20 days in the absence of a misconduct charge. The Court of Appeals did note, however, that if an inmate is committed to undesirable conditions for an atypical period of time in violation of state law, that is a factor to be considered in determining whether the prisoner has

been subjected to "atypical and significant hardship" triggering due process protection.  Id.

Where treatment programs do not result in "atypical and significant hardship," a court will not micro-manage the decisions of prison officials with respect to required treatment or educational programs.  See Garvin v. Terhune, 157 F.Supp.2d 416 (D.N.J. 2001), aff'd, 35 Fed.Appx. 356 (3d Cir. 2002).  Here, the treatment program described by Plaintiff does not result in "atypical and significant hardship."  Accordingly, Plaintiff has failed to state a claim for violation of his due process rights.

D.   First Amendment Claims

Plaintiff alleges that the drug treatment program that he is required to attend includes a religious component that is offensive to him as a Muslim and that he is prevented from attending other religious activities.

1.   Establishment Clause

The Establishment Clause of the First Amendment provides that, "Congress shall make no law respecting an establishment of religion ... ."  At a minimum, the Establishment Clause, applicable to the states through the Fourteenth Amendment, provides that "government may not coerce anyone to support or participate in religion or its exercise."  Lee v. Weisman, 505 U.S. 577, 587 (1992).  Mandatory attendance by prisoners at drug and alcohol treatment programs which include a religious

12

component violates the Establishment Clause.  See Bobko v. Lavan, 157 Fed.Appx. 516, 518, 2005 WL 3304147, *2 (3d Cir. 2005); Warner v. Orange County Dept. of Probation, 115 F.3d 1068, 1074-77 (2d Cir. 1997); Kerr v. Farrey, 95 F.3d 472, 476-80 (7th Cir. 1996).

Plaintiff's allegation that he is required to attend a drug treatment program with a religious component is sufficient to state a claim for violation of the Establishment Clause of the First Amendment.

2. Free Exercise Clause

The First Amendment to the U.S. Constitution, made applicable to the states by the Fourteenth Amendment, Cantwell v. Connecticut, 310 U.S. 296, 303 (1940), provides, inter alia, that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof... ."  U.S. Const. amend. I.  "Convicted prisoners do not forfeit all constitutional protections by reason of their conviction and confinement in prison," Bell v. Wolfish, 441 U.S. 520, 545 (1979), including the protections of the First Amendment and its directive that no law shall prohibit the free exercise of religion, O'Lone v. Estate of Shabazz, 482 U.S. 342, 348 (1987). "All prisoners must be afforded reasonable opportunities to 'exercise the religious freedom guaranteed by the First and

13

Fourteenth Amendment.'" Small v. Lehman, 98 F.3d 762, 765 (3d Cir. 1996) (quoting Cruz v. Beto, 405 U.S. 319, 322 n.2 (1972)).

"The mere assertion of a religious belief does not automatically trigger First Amendment protections, however. To the contrary, only those beliefs which are both sincerely held and religious in nature are entitled to constitutional protection." DeHart v. Horn, 227 F.3d 47, 51 (3d Cir. 2000). See also Sutton v. Rasheed, 323 F.3d 236, 250-51 (3d Cir. 2003).

Once such a sincerely held religious belief is demonstrated, an inmate may establish that a prison regulation or practice violates the right to free exercise of religion by showing that it violates the "reasonableness test" set forth in Turner v. Safley, 482 U.S. 78, 89 (1987), and O'Lone, 482 U.S. at 349.[2] The standards delineated in Turner and O'Lone indicate that when a prison regulation or practice encroaches upon prisoners' rights to free exercise of their religion, the regulation is valid if it is reasonably related to a legitimate penological interest. Turner, 482 U.S. at 89; O'Lone, 482 U.S. at 349.  The

---

[2] More recently, in Employment Division, Dept. of Human Resources v. Smith, 494 U.S. 872, 878-79 (1990), the Supreme Court held that neutral laws of general applicability that incidentally impinge on religious practices do not violate the Free Exercise Clause. No federal Court of Appeals has yet held that the Smith test supplants the Turner and O'Lone analysis in the prison context. See Levitan v. Ashcroft, 281 F.3d 1313 (D.C. Cir. 2002) and cases cited therein. See also Fraise v. Terhune, 283 F.3d 506, 515 n.5 (3d Cir. 2002) (acknowledging the issue, but declining to reach it in the absence of either party urging application of Smith).

reasonableness standard involves the examination of the following four factors: (1) whether the regulation or practice in question furthers a legitimate governmental interest unrelated to the suppression of expression; (2) whether there are alternative means of exercising First Amendment rights that remain open to prison inmates; (3) whether the right can be exercised only at the cost of less liberty and safety for guards and other prisoners; and (4) whether an alternative exists which would fully accommodate the prisoners' rights at de minimis cost to valid penological interests. Thornburgh v. Abbott, 490 U.S. 401, 415-18 (1989); Turner, 482 U.S. at 89-91. However, prison administrators need not choose the least restrictive means possible in trying to further legitimate penological interests. Thornburgh, 490 U.S. at 411. Moreover, "[i]f the connection between the regulation and the asserted goal is arbitrary or irrational, [however,] then the regulation fails, irrespective of whether the other factors tilt in its favor." Shaw v. Murphy, 532 U.S. 223, 230-31 (2001).

    Here, Plaintiff alleges that the drug treatment program that he is required to attend prohibits his attendance at religious services all but one day per week. This allegation is subject to the Turner analysis, which cannot be resolved based upon the allegations of the Complaint. Accordingly, this claim will be permitted to proceed.

15

E.   <u>Deprivation of Property</u>

An unauthorized deprivation of property by a state actor, whether intentional or negligent, does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful post-deprivation remedy for the loss is available.  <u>Hudson v. Palmer</u>, 468 U.S. 517, 530-36 (1984); <u>Parratt v. Taylor</u>, 451 U.S. 527, 543-44 (1981), <u>overruled in part on other grounds</u>, <u>Daniels v. Williams</u>, 474 U.S. 327, 328 (1986).  In <u>Logan v. Zimmerman Brush Co.</u>, 455 U.S. 422, 435-36 (1982), the Supreme Court explained, however, that post-deprivation remedies do not satisfy the Due Process Clause if the deprivation of property is accomplished pursuant to established state procedure rather than through random, unauthorized action. <u>But see</u> <u>Tillman v. Lebanon Co. Correctional Facility</u>, 221 F.3d 410, 421 n.12 (3d. Cir. 2000) (citing <u>United States v. James Daniel Good Real Property</u>, 510 U.S. 43, 53 (1993)) (in "extraordinary situations" such as routine deduction of fees from a prisoner's account even without authorization, post-deprivation remedies may be adequate).

If the action of the defendants was unauthorized, Plaintiff has failed to state a claim because New Jersey does provide a post-deprivation remedy for unauthorized deprivation of property by public employees.  <u>See</u> New Jersey Tort Claims Act, N.J. Stat. Ann. §§ 59:1-1 <u>et seq.</u> (2001).  Plaintiff has alleged no facts

16

suggesting that the defendants deprived him of property pursuant to an established state procedure, nor has this Court located any such established procedure.  To the contrary, established state procedures require prison officials to preserve personal property of inmates.  See, e.g., N.J. Admin. Code §§ 10A:1-11.1 et. seq. (2001).

It does not appear that amendment could cure the deficiencies in Plaintiff's deprivation of property claim. Accordingly, it must be dismissed with prejudice.

## V.   CONCLUSION

For the reasons set forth above, the Establishment Clause and Free Exercise Clause claims will be permitted to proceed as against defendants Gateway Foundation, Michael Darsey and Carrie Johnson.  All other claims will be dismissed, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1), for failure to state a claim.  However, because it is conceivable that Plaintiff may be able to supplement his pleading with facts sufficient to cure the deficiencies of certain claims, the Court will grant

Plaintiff leave to file an amended complaint.[3]  An appropriate order follows.

>                               S/Robert B. Kugler
>                               Robert B. Kugler
>                               United States District Judge

Dated: January 16, 2007

---

[3] Plaintiff should note that when an amended complaint is filed, the original complaint no longer performs any function in the case and "cannot be utilized to cure defects in the amended [complaint], unless the relevant portion is specifically incorporated in the new [complaint]." 6 Wright, Miller & Kane, Federal Practice and Procedure § 1476 (2d ed. 1990) (footnotes omitted). An amended complaint may adopt some or all of the allegations in the original complaint, but the identification of the particular allegations to be adopted must be clear and explicit. Id. To avoid confusion, the safer course is to file an amended complaint that is complete in itself. Id.